IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSTANCE J. CONCANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:2005-463 |
| | ) |
| JO ANNE B. BARNHART, | ) JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 11-14). This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 11) and grant the Motion for Summary Judgment filed by the Defendant (Document No. 13).

Plaintiff Constance J. Concannon ("Plaintiff") filed an application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act on September 16, 2003. R. p. 11. The claim was initially denied on January 13, 2004. *Id.* Thereafter, on March 1, 2004, the Plaintiff filed a request for a hearing. *Id.* A hearing was held on February 16, 2005, in Altoona, Pennsylvania, before Administrative Law Judge Raymond J. Zadzilko ("ALJ"). R. pp. 139-174. The Plaintiff, who

1

was represented by counsel, appeared and testified at the hearing. R. pp. 141-167. Dr. Joseph Bentivegna, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 168-173.

On July 29, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. pp. 8-18. The Appeals Council subsequently denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. pp. 3-5. The Plaintiff filed a complaint in this matter on December 20, 2005. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner") filed an answer on March 7, 2006. Document No. 6. The Plaintiff and the Commissioner filed cross-motions for summary judgment on June 5, 2006, and July 5, 2006, respectively. Document Nos. 11 & 13.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really

> constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f),

3

416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

The ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. R. p. 17. Proceeding to the second step of the sequential evaluation process, the ALJ concluded that the Plaintiff suffered from an adjustment disorder with mixed emotional features. *Id.* Although this impairment was deemed to be "severe" for purposes of 20 C.F.R. § 416.920(a)(4)(ii), the ALJ determined that it did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. § 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant does not have any exertional impairments. She retains the ability to engage in work that involves no more than simple, routine, repetitive tasks; low stress; no deadlines or fast paced production work and no more than occasional interaction with supervisors, coworkers or the public.

R. p. 18. Moving on to the fourth step of the sequential evaluation process, the ALJ concluded that the Plaintiff had no past relevant work for purposes of 20 C.F.R. § 416.965. *Id.*

At the time of the ALJ's decision, the Plaintiff was forty-three years of age and possessed a high school equivalency diploma. *Id.* Based on the applicable residual functional capacity and vocational assessments, the ALJ determined that the Plaintiff could work as a stock clerk, mail machine operator, laundry worker, kitchen helper, file clerk, hand finisher, labeler/pricer, or hand packer. R. p. 18. Dr. Bentivegna's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 168-174.

In support of her motion for summary judgment, the Plaintiff makes two distinct arguments. First, she argues that the ALJ erred in determining that her impairment did not equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Document No. 12 p. 3. Second, she argues that the ALJ considered only her "adjustment disorder with mixed emotional features," thereby ignoring her depression and obsessive compulsive disorder. *Id.* The Court will proceed to address each argument in turn.

In her first argument, the Plaintiff contends that the ALJ erred in determining that her impairment did not meet or medically equal a listed impairment. Her argument focuses on Listings 12.04 and 12.06, which deal with affective disorders and anxiety related disorders, respectively. *Id.* Nevertheless, she makes no attempt to explain why she believes that she meets the criteria for these listings. As the U.S. Supreme Court declared in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531, 110 S.Ct. at 892, 107 L.Ed.2d at 980. "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531, 110 S.Ct. at 891, 107 L.Ed.2d at 980 (emphasis in original).

In support of her contention that she meets or medically equals Listings 12.04 and 12.06, the Plaintiff simply claims that Dr. Edward Lipski noted in his initial evaluation report that the Plaintiff had been experiencing crying spells, sleep and appetite disturbances, and restrictions on her motivation,

interest, and energy levels. Document No. 12 p. 5. She further contends that her coping and functional levels have been compromised by traits linked to generalized anxiety and obsessive compulsive disorder. *Id.* These assertions are clearly insufficient to establish that the Plaintiff suffers from a listed impairment. The Plaintiff makes no attempt whatsoever to explain how her symptoms can be equated with the specific criteria for establishing an impairment which meets or medically equals an affective disorder under Listing 12.04 or an anxiety related disorder under Listing 12.06.

The evidence contained in the record clearly supports the ALJ's determination that the Plaintiff's impairments do not meet or medically equal a listed impairment. Dr. John Grutkowski, who completed an assessment form on December 18, 2003, determined that the Plaintiff's impairments did not satisfy the relevant criteria.[1] With respect to the B criteria of the listings, he concluded that the Plaintiff experienced only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. R. p. 111. He further concluded that she did not satisfy the C criteria of either listing. R. p. 112. Consequently, Dr. Grutkowski's findings are inconsistent with the Plaintiff's assertion that her impairment meets or medically equals a listed impairment.

In November, 2003, the Plaintiff was examined by Dr. Tammy Haslett, a licensed psychologist. Dr. Haslett diagnosed the Plaintiff as having "Major Depressive Disorder, Moderate," and she assigned

---

[1] Dr. Grutkowski opined that the Plaintiff's impairment was not severe. R. p. 101. Had the ALJ accepted Dr. Grutkowski's opinion in its entirety, the case would have ended at the second step of the sequential evaluation process, without the need to even reach the equivalency analysis. Nevertheless, it is clear that any doubt as to whether a severity showing has been made must be resolved in favor of the claimant, since "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004).

her a Global Assessment of Functioning ("GAF") rating of 70. R. p. 98. Dr. Haslett determined that the Plaintiff was unrestricted in her ability to understand and remember short, simple instructions, carry out short, simple instructions, and interact appropriately with co-workers. R. p. 99. She also concluded that the Plaintiff was only slightly restricted in her ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with supervisors, interact appropriately with the public, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. *Id.* Dr. Haslett's findings certainly do not support the Plaintiff's assertion that her impairment meets or medically equals a listed impairment.

The ALJ also considered the report of Dr. Edwin Tan, which was submitted for consideration after the conclusion of the hearing. R. p. 3. Dr. Tan, who completed his report on June 1, 2005, determined that the Plaintiff suffered from an "Adjustment disorder, with mixed emotional features, depression and anxiety." R. p. 133. He assigned her a GAF of 79. *Id.* With respect to the Plaintiff's job-related limitations, Dr. Tan found her to be only slightly restricted in her ability to understand and remember short, simple instructions, carry out short, simple instructions, understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. R. p. 137. He also indicated that no other capabilities were affected by the Plaintiff's impairments. R. p. 138.

The Plaintiff points to no evidence indicating that her impairment met or medically equaled the

criteria for Listings 12.04 and 12.06. Even if her impairment restricted her to the same degree as those found in the listings, the Plaintiff could not establish the existence of *per se* disability at the third step of the sequential evaluation process without meeting the specific criteria found in the listings. The functional consequences of her impairment, irrespective of their nature and extent, cannot justify a determination of equivalence. *Sullivan*, 493 U.S. at 532, 110 S.Ct. at 892, 107 L.Ed.2d at 980. Accordingly, the ALJ's determination that the Plaintiff's impairment did not meet or medically equal a listed impairment is supported by substantial evidence.

In her second argument, the Plaintiff contends that the ALJ wrongfully ignored her diagnoses of depression and obsessive compulsive disorder when he found her to be suffering from only "an adjustment disorder with mixed emotional features." R. p. 12. The Plaintiff's complaints are not supported by the record. With respect to the characterization of her severe impairment, the ALJ apparently chose to use the terminology employed by Dr. Tan. R. p. 133. It is apparent that the ALJ intended to use broad language for the purpose of incorporating the symptoms and conditions which the Plaintiff claims that he ignored. The Court has found numerous instances in which the term "adjustment disorder" has been used to describe an impairment resulting in anxiety and depression. *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006)(using the phrase "adjustment disorder with depression and anxiety"); *Daughtry v. Polk*, 2006 U.S. App. LEXIS 17962, 6 (4th Cir.)(adjustment disorder deemed to "include depression"); *McBride v. Halter Marine, Inc.*, 2006 U.S. App. LEXIS 14367, 5 (5th Cir.)(diagnosis of an "adjustment disorder with mixed emotions of anxiety and depression"); *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004)(quoting a hypothetical question regarding a claimant with "an adjustment disorder with depression"); *Bohland v. Barnhart*, 2002 U.S.

App. LEXIS 15060, 2 (9th Cir.)(depression believed to be stemming from "an adjustment disorder with mixed anxiety and depressed mood and post traumatic stress disorder, chronic, delayed onset"); *Boudreaux v. United States of America*, 280 F.3d 461, 465 (5th Cir. 2002)("moderate depression and anxiety" characterized as an "adjustment disorder"); *Steere v. George Washington University School of Medicine and Health Sciences*, 439 F.Supp.2d 17, 23, n. 3 (D.D.C. 2006)(diagnosis of "an adjustment disorder with depression and anxiety"); *Kuhn v. UnumProvident Corporation*, 2006 U.S. Dist. LEXIS 70530, 13 (Ariz.)(adjustment disorder believed to cause symptoms of "clinical depression, obsessive compulsive tendencies, high anxiety"); *David v. Barnhart*, 446 F.Supp.2d 860, 865 (N.D.Ill. 2006)(diagnosis of an "adjustment disorder with mixed anxiety and depression"); *La Parta v. Barnhart*, 402 F.Supp.2d 429, 430 (W.D.N.Y. 2005)(diagnosis of "an adjustment disorder with anxiety and depression"); *McPherson v. Barnhart*, 356 F.Supp.2d 953, 958 (S.D.Iowa 2005)(diagnosis of an "Adjustment Disorder with Mixed Anxiety and Depression"). In light of these examples, the Court is not convinced that the ALJ's characterization of the Plaintiff's severe impairment as "an adjustment disorder with mixed emotional features" constituted a failure to consider all of her impairments in combination. R. p. 12. The ALJ's comprehensive analysis of the Plaintiff's health problems, which included a determination that her right breast lumpectomy history did not amount to a severe impairment, belies the Plaintiff's contention that the ALJ ignored some of her impairments. For this reason, the Plaintiff's argument is wholly without merit.

Although the Plaintiff extensively quotes cases discussing the appropriate weight to be given to the opinion of a treating physician, she utterly fails to explain how these principles apply to her case. Document No. 12 pp. 8-10. She fails to call to the Court's attention a specific opinion of a treating

physician to support her allegation of disability. At the hearing, the Plaintiff testified that Dr. Lipski had indicated that her medications controlled her sufficiently to enable her to work. R. p. 155. The record indicates that the Plaintiff stopped seeing Dr. Lipski precisely because he found her to be capable of performing the duties of a job.[2] R. p. 122. Consequently, there is no opinion of a treating physician to contradict the findings of Dr. Grutkowski, Dr. Haslett and Dr. Tan. As the ALJ pointed out, the record contains evidence that the Plaintiff herself told Dr. Haslett that she was capable of working, and that her depression would improve if she were to engage in substantial gainful activity. R. pp. 15, 97. The arguments in the Plaintiff's brief are simply not supported by evidence in the record.

The Plaintiff apparently believes that the ALJ placed too much emphasis on her ability to engage in activities such as housework, shopping, yard work, washing dishes, cooking and cleaning windows. R. p. 13; Document No. 12 p. 9. Evidence of this kind would carry little weight if it were contradicted by significant medical evidence of the existence of statutory disability. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). In the instant case, however, the evidence of the Plaintiff's daily activities is consistent with the findings of the relevant treating, examining and nonexamining physicians. It is apparent that the Commissioner's decision is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g).

The Court observes that, at the fifth step of the sequential evaluation process, the burden is on the Commissioner rather than the claimant. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005);

---

[2] At the hearing, the Plaintiff's attorney questioned the accuracy of the Plaintiff's testimony, apparently contending that there was no record evidence indicating that Dr. Lipski had indicated that the Plaintiff was capable of performing work. R. p. 173. The evidence of record, however, does suggest that the Plaintiff stopped seeing Dr. Lipski because of his belief that she was not disabled. R. p. 122. Even if this documentation were found to be inaccurate, the Plaintiff fails to call to the Court's attention any evidence that Dr. Lipski ever opined that the Plaintiff was disabled.

*Sykes v. Apfel*, 228 F.3d 259, 262-263 (3d Cir. 2000).  In the present case, it is clear that the Commissioner met her burden.  The ALJ's hypothetical question contained all of the limitations which were found to be credibly established, and Dr. Bentivegna's testimony established that jobs consistent with the Plaintiff's residual functional capacity existed in the national economy.  R. pp. 170-171; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Under these circumstances, it is clear that the decision of the Commissioner must be affirmed.  Accordingly, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 11) and grant the Commissioner's Motion for Summary Judgment (Document No. 13).

    An appropriate Order follows.

**AND NOW**, this 22nd day of January, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 11) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED.

BY THE COURT:

_____
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**
